**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**VERIZON WIRELESS TENNESSEE PARTNERSHIP
d/b/a VERIZON WIRELESS**                                    **PLAINTIFF**


**v.**                                    **CIVIL ACTION NO.: 3:18cv043-MPM-JMV**

**DESOTO COUNTY, MISSISSIPPI;
DESOTO COUNTY BOARD OF SUPERVISORS;
JESSIE MEDLIN, MARK GARDNER, BILL RUSSELL,
LEE CALDWELL, and MICHAEL LEE
in their official capacities
as members of the DeSoto County Board of Supervisors,**                **DEFENDANTS**


**<u>ORDER</u>**

Plaintiff Verizon Wireless and defendant Desoto County, Mississippi, as well as the

members of its Board of Supervisors, have each filed various motions to dismiss, and/or for

summary judgment in this case.  The court, having considered the memoranda and submissions

of the parties, is prepared to rule.

Verizon filed the instant action under the Communications Act of 1934, as amended by

the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7), (the "TCA" or "the Act"), alleging

that defendant Desoto County ("the County"), acting through its Board of Supervisors, violated

federal law by denying it permission to construct a wireless telecommunications tower.  Verizon

alleges (and the County denies) that a gap exists in its cell phone coverage in the area which

requires the building of an additional wireless tower.  Verizon accordingly filed, on or about

October 4, 2017, a conditional use application to build a one hundred and ninety (190) foot

monopole wireless communications tower in western Desoto County.  The Desoto County Board

of Supervisors ("the Board") held a public hearing on Verizon's application on December 18, 2018, following which it unanimously voted to deny the application.

In seeking for this court to overturn the Board's decision, Verizon relies upon the TCA's provision that:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.

47 U.S.C. § 332(c)(7)(B)(v). In seeking dismissal of this lawsuit, the County focuses upon timeliness issues, arguing that Verizon failed to file this action within the thirty-day period set forth in § 332(c)(7)(B)(v). In considering this argument, this court notes that the U.S. Supreme Court recently held that the thirty-day period to commence an action under the TCA begins to run upon the issuance of the written denial required by the Act. *T-Mobile S., LLC v. City of Roswell, Ga.*, 135 S. Ct. 808, 817 n. 4 (2015) ("The relevant 'final action' is the issuance of the written notice of denial."). In its initial brief, the County argued that the thirty-day period began running upon the Board's December 18 vote, but, in response to Verizon's citation to *Roswell*, it appears to have receded from this position.

In its reply brief, the County appears to acknowledge that, in light of *Roswell*, the Board's December 18, 2017 vote denying Verizon's application did not, in fact, trigger the running of the thirty-day limitations period. [Reply brief at 3]. The County nevertheless argues, however, that the filing of the instant lawsuit on February 20, 2018 was untimely, inasmuch as, it contends, the Board provided written notice of its denial on January 2, 2018, when it published the written minutes of its December 18 meeting. In this vein, the County cites the Supreme Court's

statement in *Roswell* that "detailed meeting minutes" may suffice to meet the "written notice of denial" requirement. *Roswell*, 135 S. Ct. at 816.

This court regards the County's argument as being a reasonable one in light of *Roswell*, and, if the record did not include a much clearer, and better, candidate for its "written notice of denial," then it might well agree that this action is untimely. As it happens, however, Verizon has submitted a January 22, 2018 document which, it seems clear to this court, was intended to be the County's definitive written denial of its application. Unlike the board minutes, which covered a wide range of topics dealt with by the Board at its December 18 session, the January 22, 2018 document signed by board president Mark Gardner dealt solely with Verizon's application, and it was, by all indications, intended to be its formal written denial of same.

The January 22 document initially notes that the Board held a December 18 meeting to consider Verizon's appeal of the initial denial of its petition by the County's Board of Adjustment. The document then sets forth the Board's reasons for rejecting Verizon's application, including its findings that:

  1. There is insubstantial proof as to whether there exists a cap in overage for the area to be serviced by the proposed cell tower;

  2. There is insubstantial proof as to whether existing towers could or could not be enhanced so as to provide improved service to the area;

  3. There is not sufficient evidence, there will be significant aesthetic effects to community [sic.]

  4. The no build zone of 142.5 feet, set forth in the Desoto County Zoning Ordinance, has not been met, as the distance to property line of the James' property is 137 feet, and the first outbuilding is 178 feet away and tower is 190 feet;

  5. The construction of the tower will adversely affect the drainage in this area.

[January 22, 2018 document at 1].  The January 22 document then concludes with language which, it seems clear to this court, was intended to represent its formal rejection of Verizon's application:

> Now, therefore, be it resolved, as follows:
> Section 1. That the appeal by the Applicant, to overturn the Board of Adjustment denial of the Conditional Use Application is denied, and the decision of the Board of Adjustment denying the Conditional Use Application is hereby affirmed.

[*Id.* at 1-2].

In its briefing, the County never provides a sufficient explanation regarding the purpose of the January 22 document, assuming the January 2 minutes were its "written notice of denial" of Verizon's application.  The County would apparently have this court regard the January 22 document as a legal nullity, but it does not believe that it would have taken the time and effort to prepare that document if it did not feel that it had a purpose.  It appears to this court that the County itself believed that the January 22 document was, in fact, its written notice of denial of Verizon's application, and allowing it to issue such a document and thereupon deny that it had any particular legal significance would raise serious fairness issues.  Indeed, it strikes this court that any reasonable party in Verizon's position would have regarded the January 22 document as being the county's formal written denial of its petition, which gave it thirty days to file an appeal under *Roswell*.

This court does not believe that it was the County's intent to use the January 22 document as part of a legal "bait and switch"; this seems clear enough from the fact that it did not even argue initially that the January 2 board minutes constituted its formal written denial. Nevertheless, any court deciding these issues should appropriately consider the implications of its ruling not only upon the case at bar, but in other cases as well.  This court believes that these considerations support Verizon's position in this case, since adopting the County's position

4

might well encourage less scrupulous municipalities to "muddy the waters" by submitting additional written denials after issuing written Board minutes denying an application. This court therefore concludes that the County issued its formal written denial of Verizon's claim on January 22, 2018 and that the instant action was timely filed. The County's motion to dismiss will therefore be denied.

This court now turns to defendants' motion to dismiss the individual members of the Board of Supervisors from this action. In their motion, the Board members argue that the County is the sole proper defendant in this action and that they should be dismissed from it. In responding to their motion, Verizon makes it clear that it has sued these board members in their *official* capacities, that it seeks no recovery from them in their individual capacities, and that it has named them as defendants merely to ensure that any injunctive relief against the County is directed at the parties with the authority to act on its behalf. With (and subject to) these understandings, this court believes that the presence of the board members as nominal defendants in this lawsuit is appropriate. Indeed, it is well settled that, in federal lawsuits brought under 42 U.S.C. § 1983, claims against county employees in their official capacities are no different than claims against the county itself. *See, e.g. Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L. Ed. 2d 114 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") *See also Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000). In their motion to dismiss, defendants offer this court no authority indicating that this rule operates any differently in TCA actions, and this court can discern no reason why it would.

As the parties seeking dismissal, the Board members have the burden of submitting authority on point, and they have failed to do so, instead relying upon vague arguments based

upon authority which arose in different contexts. This court will therefore deny the motion to dismiss the board members from this action, but, in so doing, it emphasizes that it will hold Verizon to its representation that it is seeking recovery against them solely in their official capacities. With this understanding, it seems clear that the Board members are not appropriately regarded as additional parties at all, but merely as a different name for the County itself. In their briefing, defendants raise concerns that they might be required to secure individual counsel and that they might be required to file separate briefing in this case. This court certainly does not believe that this is the case, given the understandings stated above. The docket reveals that the same attorney is representing all defendants in this case, and this court can see no reason why any additional briefing would be required for the Board members than for the County itself. These defendants are, once again, one and the same for the purposes of this lawsuit. With the above caveats, this court will therefore deny the motion to dismiss the members of the Board of Supervisors as nominal defendants in this case.

This court now turns to Verizon's own motion for summary judgment, in which it argues that there was, as a matter of law, insufficient basis for the County's denial of its application and that this court should render judgment in its favor without conducting the trial/hearing in this matter which has been scheduled for December 2019. In addressing this motion, this court notes at the outset that Verizon is obviously impatient to have its cell phone tower approved, given that it clearly believes that the tower is necessary to address a gap in its coverage. Nevertheless, this court regards Verizon's motion for summary judgment as being overly aggressive, since this is simply not the sort of matter upon which it is comfortable in ruling based upon written briefing. In so stating, this court emphasizes that it is being asked to overturn a unanimous vote of the Desoto County Board of Supervisors relating to an issue important to the local community.

Moreover, this court is being asked to determine the impact of a cell phone tower upon a community with which this court has far less familiarity than the Board does.

In its supplemental briefing, Verizon emphasizes that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).  Verizon further notes that, in a 2018 order, the FCC stated that "an effective prohibition occurs where a state or local legal requirement materially inhibits a provider's ability to engage in any variety of activities related to its provision of wireless services."  2018 FCC Order at ¶ 35-37.  This court fully understands that, in enacting the TCA, Congress placed great importance upon encouraging widespread wireless coverage, and it is not difficult to imagine that serious problems could result if municipalities were permitted to deny applications for additional cell phone towers without adequate reason for doing so.  Moreover, this court recognizes that "denials of permits that are based on 'hollow generalities' and 'empty records'" are insufficient to support denial of cell tower applications, as are mere "not in my backyard" objections from local residents.  *See, e.g. Wireless Pers. Commc'ns, LP v. Harrison Cty*, 2015 WL 12564945 at *6 (S.D. Miss. Nov. 9, 2015).

In light of this authority, this court intends to scrutinize the Board's decision to deny Verizon's application very closely at trial, but the question at this juncture is simply whether it should render judgment in Verizon's favor based solely upon written briefing.  That is a step which this court is unwilling to take, based upon the record before it.  In so stating, the court notes that the law in this context has aspects which are, arguably, favorable to the County.  Indeed, it is well settled that "[a]ny decision by a State or local government or instrumentality

thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Thus, the law only requires that the decision of the Board be supported by "substantial evidence," and the evidence in question relates largely to factual issues with which the Board has, once again, much greater familiarity than this court.

In the court's view, there are issues in the record in this case which would better be explored in a formal trial/hearing. For example, Verizon concedes in its brief that adverse drainage consequences caused by a proposed tower may, in fact, constitute a valid reason for the denial of a proposal. Moreover, the Board specifically found in its January 22 denial that "construction of the tower will adversely affect the drainage in this area." [*Id.* at 1]. At the hearing before the Board, resident Judy James testified regarding her concerns on the drainage issue, stating that:

> The proposed tower is set in a valley where there is a natural water flow. This water – actually, I don't know where it starts exactly but I know it comes from Honeysuckle Lane all the way down Nail [Road] and crosses Nail Road across our driveway. My husband many years ago – and we've dealt with this over the 47 years – has planted about eight crossties across the driveway. It is now blacktopped, and – and we're comfortable with that. But it's taken a lot of work.
> That's how much water flows across there. It flows across Mr. Belew's back property in his back yard and so forth and goes through to this valley. So that's a concern for me. Is the ground stable enough. Does it get dry enough to support something of this nature?

Doc. 27 at Ex. B at 31:3-16.

Verizon urges this court to conclude that this testimony is insufficient to constitute "substantial evidence" in support of the Board's decision. While this court tends to agree that the evidence is somewhat equivocal, Ms. James and the Board each have an advantage which it does not, since they actually *live* in or near the affected area. Given its disadvantageous position,

this court is not prepared to state, based on the briefing currently before it, that there was insubstantial evidence in support of the Board's finding. Indeed, this court may not even be in a position to agree with Verizon after conducting the hearing/trial which has been scheduled on these issues. Regardless, this court is simply not comfortable in ruling upon these issues based upon the briefing before it, and Verizon's motion for partial summary judgment will therefore be denied.[1]

In light of the foregoing, it is ordered that the County's motion to dismiss this lawsuit as untimely [14-1] is denied, that the motion to dismiss the members of the Board [12-1] is denied, and that Verizon's motion for partial summary judgment [24-1] is likewise denied. Verizon's motion to submit supplemental briefing [35-1] is granted.

This, the 3rd day of December, 2018.


/s/ Michael P. Mills
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

---

[1] In so stating, this court acknowledges that the hearing set for December 2019 will be limited to the record before the Board and that neither side will be entitled to present any *additional* proof. Nevertheless, it seems likely that this court will have a number of questions for both sides regarding how the evidence in the record, such as Ms. James' testimony, should be viewed in determining whether the Board had "substantial evidence" in support of its decision.